**United States District Court**
For the Northern District of California

1
2
3
4
5               UNITED STATES DISTRICT COURT
6              NORTHERN DISTRICT OF CALIFORNIA
7
8   MERAS ENGINEERING, INC., *et al.*,        No. C-11-0389 EMC
9              Plaintiffs,
10        v.                              **ORDER GRANTING PLAINTIFFS'
                                          MOTION FOR PARTIAL SUMMARY
11  CH2O, INC., *et al.*,                 JUDGMENT AND DENYING
                                          DEFENDANT'S MOTION TO STAY**
12            Defendants.
    _____/    **(Docket Nos. 54, 58)**
13
14
15                      I.    __INTRODUCTION__
16          Pending before the Court is Plaintiffs' motion for partial summary judgment and Defendant's
17  motion to stay proceedings pending the outcome of a related case in Washington district court.  This
18  case was filed by Plaintiffs Rich Bernier and Jay Sughroue, and their current employer Plaintiff
19  Meras Engineering against Defendant CH2O, Bernier and Sughroue's former employer.  Plaintiffs
20  petition the Court to declare void certain non-compete clauses in Bernier and Sughroue's
21  employment contracts with CH2O.  Shortly after this suit was filed in the Northern District of
22  California, CH2O filed suit against Bernier and Sughroue in Washington state court to enforce the
23  non-compete clauses.  That case was later removed to federal court in the Western District of
24  Washington.  On June 22, 2012, Plaintiffs moved for partial summary judgment in this case, arguing
25  that California law applies and that the non-compete clauses were clearly void under California law.
26  On July 20, 2012, Meras filed a motion to stay this case pending the outcome of the Washington
27  case.
28

1     At a hearing on these motions on October 26, 2012, this Court requested supplemental

2 briefing from the parties on the question of whether Defendant had waived any objection to venue in

3 this case.  The parties filed supplementary briefs on November 2, 2012.

4                        **II.    FACTUAL & PROCEDURAL BACKGROUND**

5     This case concerns the validity of certain clauses in employment contracts that Plaintiffs

6 Bernier and Sughroue had with Defendant CH2O.  The following facts are undisputed. Defendant

7 CH2O is a Washington corporation with its principal place of business in Washington.  Answer and

8 Affirmative Defenses to Second Amended Complaint ("Answer") ¶ 1 (Docket No. 37).  CH2O is an

9 industrial water treatment company that works with clients in agriculture and other industries.  Decl.

10 of Counsel, Philip J. Terry, in Opp. to Mot. Dismiss (Docket No. 19) ("Terry Decl.") Ex. C ¶ 3.

11 Plaintiffs Rich Bernier and Jay Sughroue are citizens of California, and Plaintiff Meras Engineering

12 is a California corporation with its principal place of business in California.  Second Amended

13 Complaint ("SAC") ¶ 1.  Meras is also in the water treatment industry.  SAC ¶ 24; Answer to SAC ¶

14 24.

15     Plaintiff Bernier worked for CH2O from 2007 to 2010 working with agricultural clients for

16 CH2O's water treatment products.  Terry Decl. Ex. C ¶ 10.  At all times during his employment with

17 CH2O, Bernier was a resident of Fresno, California, and he worked out of a home office in Fresno.

18 *Id.* ¶ 13.  He worked primarily with California clients, and did not have any clients in Washington.

19 *Id.* ¶¶ 10-13.

20     At the beginning of his employment for CH2O, Bernier signed an employment contract that

21 contained various non-compete provisions.  Terry Decl. Ex. D ¶ 6.  The contract provides that after

22 Bernier ceased working for CH2O, he would not work for "any business of a similar nature to that of

23 [CH2O] which is in competition with [CH2O]" for a period of three years.  *Id.*  He was also

24 prohibited from selling products or services that are the same or similar to those of CH2O for the

25 same period, and from soliciting other CH2O employees to engage in either of the above activities.

26 *Id.* ¶ 6.  The parties disagree about whether Bernier signed his contract in California, but there is no

27 dispute that he performed his duties under the contract in California.  Pl.'s Mot. Summ. J. at 16;

28

1    Terry Decl. Ex. C ¶ 12.  The contract, however, contained a choice of law and forum selection

2    provisions stating that:

> This agreement shall be construed in accordance with and governed
> for all purposes by the laws of the state of Washington; and the parties
> expressly agree that, in the event the Company or Employee should
> institute litigation concerning any claim of relief arising from or
> otherwise related to this agreement, jurisdiction of such claims shall be
> in the courts of the state of Washington and venue shall be in Thurston
> County.

7    Terry Decl. Ex. D ¶ 14.[1]

8          Plaintiff Sughroue worked for CH2O from 2009 to 2011.  Terry Decl. Ex. E ¶ 2.  During this

9    entire period, he lived and worked in California.  *Id.*  He visited Washington only twice during this

10   time period, first in late 2009 for some initial employee training, and later in May 2010 for a CH2O

11   sales meeting.  *Id.* ¶ 8.  At the beginning of his employment with CH2O, Sughroue signed a contract

12   with the company that contained non-competition provisions substantially similar to those in

13   Bernier's employment contract, though of shorter duration.  Terry Decl. Ex. F ¶ 6.  His contract

14   contained the same choice of law and forum selection provision as Bernier's contract.  *Id.* ¶ 13.

15         On January 26, 2011, both Bernier and Sughroue left CH2O and went to work for Meras

16   Engineering.  Terry Decl. Ex. C ¶¶ 19-20, Ex. E ¶ 20.  That same day, Bernier, Sughroue, and Meras

17   filed the instant suit seeking a declaratory judgement declaring the non-compete provisions in the

18   CH2O employment contracts to be void.  Original Complaint at 7.  Under the currently operative

19   complaint, the suit also involves claims for unfair competition, intentional and negligent interference

20   with prospective business advantage, and intentional interference with contractual relations.  SAC ¶¶

21   14-39.

22         On February 2, 2011, CH2O filed suit against Bernier and Sughroue in Washington state

23   court, seeking enforcement of those same non-compete provisions ("Washington case").  Terry

24   Decl. Ex. A.  Meras is not a party to that case.  Soon thereafter, Bernier and Sughroue removed the

25   Washington case to federal court, and then moved to dismiss, stay, or in the alternative to transfer

26   that case to the Northern District of California under the first-to-file rule.  *CH2O v. Bernier*, No.

27   _____

28         [1]  The contract also has a mandatory arbitration clause, but no party has raised this as an
     issue in either of the motions currently before the court.

**United States District Court**

For the Northern District of California

1   C11-cv-05153 RJB, Docket No. 15.  The Western District of Washington denied the motion on

2   April 18, 2011, and denied a motion for reconsideration on May 16, 2011.  *CH2O v. Bernier*, No.

3   C11-cv-05153 RJB, Docket Nos. 15, 23.  The court in the Washington case declined to transfer the

4   case under the first-to-file rule, finding that the forum selection clause in the contract gave

5   Washington court personal jurisdiction over Bernier and Sughroue.  *Id.*  Docket No. 15 at 5-8.  The

6   court also found that the choice of law clause was enforceable and that Washington law should

7   govern the application of the employment contract.  *Id.* at 16.  In finding the choice of law clause

8   enforceable (over the objection of Bernier and Sughroue), the court looked at the Restatement

9   (Second) of Conflict of Laws § 187, in particular, § 187(2)(b).  *Id.* at 12-13.  This section provides

10  that a contractual choice of law clause will not control where "application of the law of the chosen

11  state would be contrary to a fundamental policy of a state which has a materially greater interest than

12  the chosen state in the determination of the particular issue and which, . . . would be the state of the

13  applicable law in the absence of an effective choice of law by the parties."  Restatement (Second) of

14  Conflict of Laws § 187(2)(b).  The Washington court found that under this standard, both

15  Washington and California had strong interests in the issues involved in the case, but that

16  California's interest was not "materially greater" than Washington's.  *Id.* at 14-16.

17        On June 16, 2011, the Washington court approved a stipulated stay in the Washington case

18  while Bernier and Sughroue filed a request for a writ of mandamus with the Ninth Circuit and while

19  the parties participated in mediation in the Northern District of California in this case.  Washington

20  case, Docket No. 30.  The Ninth Circuit denied the writ on October 19, 2011.  The Washington court

21  lifted the stay at CH2O's request on March 23, 2012.  Washington case, Docket No. 31, 32.

22        On April 12, 2012, Bernier filed for Chapter 13 bankruptcy in the Eastern District of

23  California.  *In re Bernier*, Case No. 12-12633-A-13 ("Bankruptcy case").  On April 27 the

24  Washington case was stayed by stipulation of the parties as to both Bernier and Sughroue until the

25  conclusion of the bankruptcy proceedings.  Washington case, Docket No. 38.  On September 6,

26  2012, the bankruptcy court granted in part CH2O's motion to lift the automatic bankruptcy stay as to

27  the Washington case.  Bankruptcy case, Docket No. 66.  The bankruptcy court lifted the stay as to

28

United States District Court

For the Northern District of California

1   CH2O's claims for injunctive and declaratory relief, but kept the stay in place as to any claim for

2   money damages.  *Id.*

3        On October 10, 2012, the Western District of Washington denied CH2O's motion to lift the

4   stay on the proceedings in that forum.  Washington case, Docket No. 46.  The Washington court

5   concluded that allowing the case to proceed as to injunctive and declaratory relief but not money

6   damages would unnecessarily bifurcate the trial and result in piece meal litigation.  *Id.*  That same

7   day in this instant case, the Plaintiffs filed a supplementary opposition without leave, addressing the

8   impact of the continued stay in the Washington case.  Docket No. 82.  The proceedings in

9   Washington remain stayed until the conclusion of the Bernier bankruptcy proceedings.  *Id.*

## III.   DISCUSSION

A.   Defendant's Motion to Stay Case

12        Defendant moves for a stay of the proceeding in this case pending the outcome in the

13   Washington matter.  Defendant argues that the Washington court has already ruled on one of the

14   main substantive legal issues in this case – concluding that choice of law clause in the contract was

15   enforceable and thus Washington rather than California law applied.  Def.'s Mot. to Stay at 4-5.[2]

16   Defendant notes that absent the bankruptcy stay, the Washington state court case would have been at

17   a more advanced stage than this case, and states that it only consented to the stay of the Washington

18   litigation with the understanding that the stay would apply equally in this matter.  *Id.*  Plaintiffs

19   object to the stay, arguing that the "gravitational pull" is towards the proceedings in this court, as it

20   has proceeded further than the Washington case.

21        1.   Legal Standard for Issuing Stay

22        A court's power to stay proceedings is incidental to its inherent power to control the

23   disposition of its cases in the interests of efficiency and fairness to the court, counsel and litigants.

24   *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  For the sake of judicial economy, such a stay

---

26   [2] Defendant offers only a brief argument in its motion, states that "no additional briefing is
    necessary beyond the legal discussion in [the Western District of Washington] order" denying
27   Bernier and Sughroue's motion to dismiss stay or transfer.  It attaches that order and its brief from
    the motion in that case.  While the issues presented here are similar to those in the Washington case,
28   they are not identical, and the relief sought is different, so it is not always entirely clear what
    Defendant is arguing in this motion.

**United States District Court**
For the Northern District of California

1   may be granted pending the outcome of other legal proceedings related to the case. *Leyva v.*

2   *Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979). The district court's

3   determination of whether a stay is appropriate, "must weigh competing interests and maintain an

4   even balance." *Landis*, 299 U.S. at 254-55. The Ninth Circuit has noted that these competing

5   interests include:

> the possible damage which may result from the granting of a stay, the
> hardship or inequity which a party may suffer in being required to go
> forward, and the orderly course of justice measured in terms of the
> simplifying or complicating of issues, proof, and questions of law
> which could be expected to result from a stay.

9   *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55). If there

10  is "if there is even a fair possibility" that the stay will harm the non-moving party, the party seeking

11  the stay "must make out a clear case of hardship or inequity in being required to go forward."

12  *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). The Ninth Circuit has held, however, that "being

13  required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'

14  within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

15          Plaintiffs argue that a stay is inappropriate here because Defendant has failed to show a clear

16  case of hardship or inequity absent the stay. Pl.'s Opp. at 7. This misstates the applicable law. A

17  party seeking a stay need make such a showing only if the party opposing the stay first demonstrates

18  that there is a "fair possibility" that a stay will cause it injury. *See Dependable Highway*, 498 F.3d

19  at 1066 (stating that, "if there is even a fair possibility that [a] stay ... will work damage to some one

20  else, the stay may be inappropriate absent a showing by the moving party of 'hardship or inequity")

21  (internal quotation marks omitted). Before Defendant is obligated to show a clear case of hardship,

22  therefore, Plaintiffs must first make out a fair possibility that they will be harmed by the stay.

23          As to harm, Plaintiffs appear to argue that they will be harmed because the witnesses in this

24  case largely reside in California, making trying the case in Washington logistically difficult. Pl.'s

25  Opp. at 7 n.3. Defendant responds that local counsel for Plaintiffs had no difficulty obtaining

26  witness declarations for a recent show cause hearing in a different Washington state court matter;

27  however, this does not address the difficulty of arranging for witnesses to testify in person at trial.

28  Def.'s Reply at 4. Defendant also argues that Plaintiffs would not be prejudiced by a stay because

**United States District Court**
For the Northern District of California

the Washington case can be resolved fairly swiftly after the bankruptcy stay is lifted, but this argument is premised on the assumption that the stay in the Washington case would soon be lifted. Given the that the Washington court has recently refused to lift the stay, that may not be accurate. Given the substantial delay that would likely result from a stay, it is likely that Plaintiffs would be left in a state of uncertainty for a significant length of time were the stay granted herein.  Hence, Plaintiffs would suffer some harm.

Additionally, Meras, which is not a party to the Washington case, would be prejudiced by a stay in that it would be unable to participate in proceedings that will decide key legal questions affecting Meras' rights.  While *Landis* does not require a complete identity of parties and issues before staying one case during the pendency of another is proper, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 254-55.  The Ninth Circuit has granted a stay where parties in the two cases were not identical, but only where the party opposing the stay was involved in the parallel litigation.  *Cf. CMAX*, 300 F.2d at 266, 268 n.8 (stay affirmed where party objecting to the stay was also a party to the administrative proceedings); *Butler v. Judge of U.S. District Court*, 116 F.2d 1013, 1016 (9th Cir. 1941) (affirming a stay of a federal court case during pendency of a related state court case where all the federal parties were in the state case); *Lecor, Inc. v. U.S. District Court*, 502 F.2d 104, 105 (9th Cir. 1974) (stay of the district court case during the pendency of a related state case was improper where parties on both sides of the federal case were not involved in the state case).

In the case at bar, the fact that Meras is not a party in the Washington case is sufficient to show the fair possibility of harm required under *Landis*.  *Landis*, 299 U.S. at 255.  A final resolution in the Washington case would resolve the enforceability of the choice of law and validity of the non-competition clauses in the employment contracts, and thus could have the effect of forcing Meras to "stand aside while a litigant in another [case] settles the rule of law that will define the rights of both." *Id.*

As Plaintiffs have made out a fair possibility that they would be harmed by the stay, Defendant is required to show a "clear case of hardship or inequity" that they would suffer absent

United States District Court

For the Northern District of California

1  the stay. *Landis*, 299 U.S. at 255.  Defendant offers no arguments about how they would be harmed

2  if this case is allowed to proceed.  To the degree that there is any danger to Defendant of adverse

3  rulings in this case that are contrary to the rulings in the Washington case, that is not sufficient to

4  show hardship for the reasons discussed above. *See CMAX*, 300 F.2d at 269.

5      Additionally, in balancing the interests of the parties, courts must consider the length of stay

6  needed to allow the other proceeding to come to completion.  "A stay should not be granted unless it

7  appears likely the other proceedings will be concluded within a reasonable time in relation to the

8  urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864.  "Generally, stays should not

9  be indefinite in nature." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059,

10  1066 (9th Cir. 2007) (finding that district court abused discretion in staying action indefinitely for

11  pendency of arbitration in England that had not even commenced nearly two years after the stay was

12  entered).

13      The Washington court recently declined to lift the stay pending Bernier's bankruptcy.  A stay

14  in this case pending the outcome of the Washington case, therefore, would require that these

15  proceedings be halted through the pendency of two sequential lawsuits: Bernier's bankruptcy

16  proceedings and then the Washington case.  Given this, it seems unlikely that the Washington case

17  will be concluded in a reasonable amount of time. *See Leyva*, 593 F.2d at 864.

18      Accordingly, under the rule in *Landis*, a stay is not appropriate in this case.

19          2.    *Brillhart* Abstention

20      Though the Defendant does not raise this argument in its motion for a stay, the Plaintiff's

21  response and the Defendant's reply dispute the applicability of the recent Northern District of

22  California decision in *Google v. Microsoft*, 415 F. Supp. 2d 1018 (N.D. Cal. 2005).  In that case, the

23  district court granted a stay pending the outcome of a Washington state court case under the rule

24  articulated in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942).  Under *Brillhart*, a

25  district court may decline to exercise its discretion under the Declaratory Judgement Act when

26  "another suit is pending in a state court presenting the same issues, not governed by federal law,

27  between the same parties." *Id.* at 495.  "A district court . . . when deciding whether to exercise its

28  jurisdiction under the Declaratory Judgments Act, must balance concerns of judicial administration,

**United States District Court**

For the Northern District of California

1   comity, and fairness to the litigants." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th

2   Cir. 1991).

3   This case is distinguishable from *Google*, and outside the rule articulated in *Brillhart* for two

4   reasons.  First, in this case, the parallel proceeding is in federal rather than state court.  While some

5   California district courts have applied the rule in *Brillhart* in cases with two parallel federal actions,

6   *see Qualcomm, Inc. v. GTE Wireless, Inc.*, 79 F. Supp. 2d 1177, 1179 (S.D. Cal. 1999); *Schmidt v.*

7   *JD Edwards World Solutions Co.*, 2001 WL 590039 (N.D. Cal. 2001), several of the justifications

8   for *Brillhart* abstention are absent when the parallel case is in federal rather than state court.  First,

9   the *Brillhart* rule seeks to avoid federal courts ruling on questions of state law unnecessarily.

10  *Chamberlain*, 931 F.2d at 1367.  Second, the rule discourages forum shopping by parties seeking to

11  avoid state courts that would otherwise hear their claims.  *Id.*  These two rationales are absent when

12  both pending cases are in federal court.

13  Additionally, the *Brillhart* rule is intended to reduce duplicative litigation, thus reducing the

14  burden on the courts.  *Id.*  Given the extended stay in the Washington case due to the pending

15  bankruptcy, concerns about duplicative litigation are not particularly critical in the instant case.

16  Finally, as noted above, there is not a complete identity of parties between this case and the

17  Washington case.  In particular, Meras, one of the plaintiffs here, is not a party to the Washington

18  case, and a stay here could effectively deprive Meras of its ability to protect its interests were the

19  state case to proceed.  This factor was not present in *Brillhart* or *Google*.  *See Brillhart*, 316 U.S. at

20  492-93; *Google*, 415 F. Supp. 2d at 1019-20.

21  3.   Forum Selection Provision

22  In their papers, the parties at times refer to the fact that the employment contracts have forum

23  selection clauses, but their arguments about the implications of this clause are not always clear.

24  Defendant's motion only refers to the Western District of Washington's order finding that the forum

25  selection clause was valid under either Washington or California law, and that the Bernier and

26  Sughroue had thereby consented to personal jurisdiction in Washington.  Def. Mot. to Stay at 5, Ex.

27  A at 5-8.  In its motion to stay, Defendant does not expressly assert that this Court should dismiss or

28  transfer this case based on the forum selection clause.  However, it is an issue this Court may

**United States District Court**

For the Northern District of California

1  address.  *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir. 1986) ("In the absence of a waiver, we

2  can find no reason to hold that the district court erred by raising the issue of defective venue on its

3  own motion.").  Plaintiffs do not address the forum selection clause in their opposition to the motion

4  to stay, though in their reply on the summary judgment motion they do argue that Defendant has

5  conceded the clause is invalid.  They misstate Defendant's position, and conflate the choice of law

6  issue with the forum selection analysis.

7       At the hearing on this motion, Plaintiffs argued that the issue of venue is not properly before

8  the court, and that even if it is, Defendant has waived any argument that this case has been brought

9  in the improper venue.  After the hearing, the parties filed supplementary briefing on this issue at

10  this Court's request.

11           a.     <u>Waiver</u>

12       A defendant may raise the defense of improper venue either in its responsive pleadings or by

13  motion under Rule 12(b)(3).  Fed. R. Civ. P. 12(b)(3).  If the issue is raised by motion, such a

14  motion "must be made before pleading if a responsive pleading is allowed."  Fed. R. Civ. P. 12(b).

15  Rules governing venue "are designed mainly for the convenience of the litigants . . . [a venue

16  statute] 'merely accords to the defendant a personal privilege respecting the venue, or place of suit,

17  which he may assert, or may waive, at his election.'"  *Hoffman v. Blaski*, 363 U.S. 335, 359-60

18  (1960) (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939)).  The

19  defense of improper venue "may be lost by failure to assert it seasonably, by formal submission in a

20  cause, or by submission through conduct."  *Neirbo*, 308 at 168.

21       The defense of improper venue is waived when the defendant makes a Rule 12 motion that

22  omits the defense, or if the defendant fails to raise the defense either in a Rule 12 motion or to

23  include it in a responsive pleading.  Fed. R. Civ. P. (h)(1).  Venue may also be waived where the

24  party's conduct in an action "constitutes a tacit admission on the part of the movant that the court

25  has personal jurisdiction, that venue is properly laid there, and that the court should dispose of the

26  case on its merits."  *Misch on Behalf of Estate of Misch v. Zee Enterprises, Inc.*, 879 F.2d 628,

27  631-32 (9th Cir. 1989).  In *Misch*, the defendant filed a motion to dismiss the plaintiff's first

28  complaint based in part on improper venue, which was granted with leave to amend.  *Id.* at 629.

United States District Court

For the Northern District of California

1   When the plaintiff filed an amended complaint, however, the defendant filed a motion to dismiss for

2   improper venue only after first filing a motion for summary judgment.  *Id.*  The court found that the

3   defendant had waived venue by filing the motion for summary judgment before asserting improper

4   venue in its later filed motion to dismiss the amended complaint.  *Id.* at 632.

5          Though there is no Ninth Circuit precedent on point, other courts have recognized that a

6   defendant who has properly raised the defense of improper venue may later waive it by its conduct

7   in litigation.  *See In re School Asbestos Litig.*, 83-0268, 1993 WL 298301 (E.D. Pa. Aug. 2, 1993)

8   ("If a party merely pleads a personal jurisdiction defense and then permits it to lie dormant while

9   subjecting an opponent to burdensome litigation on the merits, the dormant defense may be

10  waived.").  In *Reliable Tire Distributors, Inc. v. Kelly Springfield Tire Co.*, for example, the court

11  held that the defendant had waived the defense of venue despite including the defense in the answer.

12  623 F. Supp. 153, 155 (E.D. Pa. 1985).  Almost two years after filing the answer, the defendant filed

13  a motion for summary judgment that did not assert improper venue.  *Id.*  When this motion was

14  denied, the defendant brought a motion to dismiss for lack of jurisdiction and venue.  *Id.*  The court

15  found that the defendant had waived the defense of improper venue "in light of [the defendant's]

16  dilatory behavior and the prejudice that would result to plaintiff" from granting the motion.  *Id.* at

17  156.

18         On the other hand, no waiver was found in *Ferraro Foods, Inc. v. M/V IZZET INCEKARA*,

19  01 CIV. 2682 (RWS), 2001 WL 940562, at *1 (S.D.N.Y. Aug. 20, 2001)  In that case, the

20  defendants initially filed an answer that raised the defense of improper venue based on a forum

21  selection clause that provided that the proper forum was in Turkey.  *Id.*  The defendants

22  subsequently stipulated to have the case transferred from the District of New Jersey to the Southern

23  District of New York, though they informed the plaintiffs that they still intended to seek dismissal of

24  the action based on improper venue.  *Id.*  After the transfer, the defendants moved to dismiss the

25  case based on the forum selection clause.  *Id.* at *2.  There, the court found that the issue of venue

26  had not been waived because the defendants had consistently asserted their intent to pursue the issue

27  of venue.  *Id.* at *4.  The court noted that "[c]ourts have found implied waiver of venue where a

28  party has repeatedly represented that venue is appropriate, or actively pursued substantive motions.

1    In contrast, no waiver has been found where parties merely participated in pretrial motions, moved

2    to dismiss after discovery has been completed, or where the opposing party was not prejudiced by

3    dismissal." *Id.* at *4 (internal citations omitted).  Similarly, the court in *Sherman v. Moore* found

4    that the defendants had not waived the defense of improper venue by engaging in discovery after

5    filing their answer and before filing a motion to dismiss for improper venue. 86 F.R.D. 471, 474

6    (S.D.N.Y. 1980).

7         The complaint in this matter was filed on January 26, 2011.  Docket No. 1.  Before

8    Defendant appeared, Plaintiffs filed an amended complaint on February 28, 2011.  Docket No. 4.

9    Defendant filed a motion to dismiss on March 15, 2011, based in part on the forum selection clause

10   in the employment contracts.  Docket No. 9.  While the motion was pending, Defendant stipulated to

11   proceed with mediation in this case.  Docket No. 23.  On April 28, the court ordered supplemental

12   briefing on the motion to dismiss in light of recent rulings in the Washington Case.  Docket No. 26.

13   On May 4, 2011, Defendant filed an answer that asserted the defense of improper venue.  Docket

14   No. 28.  On May 26, Judge Beeler of this Court granted Defendant's motion to dismiss and directed

15   Plaintiffs to file an amended complaint.  Docket No. 34.  Plaintiffs did so on June 8, 2011.  Docket

16   No. 36.  Defendant filed an answer on July 7, again asserting improper venue as a defense.  Docket

17   No. 37.  Shortly thereafter, the parties stipulated to a stay of this action pending the Ninth Circuit's

18   ruling on an appeal from an order in the Washington case.  Docket No. 39.  Just after the stay was

19   entered, the parties attended a mediation on July 19, 2011.  Docket No. 42.

20        By stipulation of the parties, the stay was lifted on April 18, 2012.  Docket No. 46.  On May

21   10, the parties filed a joint case management statement which noted Defendant's contention that

22   venue was improper and that the action should be stayed pending the outcome of the Washington

23   case.  Docket No. 48 at 2.  In the case management statement, the parties agreed to a discovery

24   schedule.  *Id.* at 5-6.  On June 13, Defendant provided initial disclosures pursuant to Rule 26(a)(1).

25   Docket No. 52.

26        On June 22, 2012, Plaintiffs filed the motion for summary judgment that is currently pending

27   before this Court.  Docket No. 54.  In its opposition to this motion, Defendant argued that the forum

28   selection clause was enforceable, and that "Washington courts . . . are the appropriate venue where

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1  questions concerning Mr. Bernier's and Mr. Sughroue's employment agreements should be

2  litigated." Docket No. 78 at 6.  A month later, on July 20, Defendant filed the currently pending

3  motion to stay.  Docket No. 58.  The motion to stay mentions the forum selection clause, though it

4  does not request dismissal or transfer under Rule 12(b)(3) or 28 U.S.C. §§ 1404, 1406, the two usual

5  approaches to raising concerns about improper venue.  Defendant attaches one of its briefs from the

6  Washington case in which it argues for the enforceability of the forum selection clause, and an order

7  of the Washington District Court finding that the forum selection clause is enforceable, and that

8  venue is proper in Washington.  Def.'s Opp. to Mot. Summ. J. Ex. A at 7, Ex. B at 7-8.  In the

9  supplemental briefing on this issue, filed November 2, 2012, Defendant indicated that it would

10  renew its motion to dismiss for improper venue the following week.  Docket No. 85 at 10.  To date,

11  it has filed no such motion.

12      As Defendant asserted improper venue as a defense in its answer on July 7, 2011, it did not

13  waive the defense under Rule 12(h).  Any waiver would thus be through Defendant's conduct in

14  litigation.  While Defendant has participated in the litigation in this case in various ways –

15  participating in mediation, agreeing to a discovery schedule, and providing initial disclosures – it has

16  also continued to raise the issue of venue and the forum selection clause.  Defendant re-stated its

17  objection to venue in the case management statement shortly after the stay was lifted, in its

18  opposition to the motion for summary judgment, and in its motion for a stay.

19      Plaintiffs point to *Milliken & Co. v. F.T.C.*, in support of their argument that Defendant has

20  waived the issue of venue by its conduct.  565 F. Supp. 511 (D.S.C. 1983).  That case, however is

21  distinguishable in that the defendants there entered several stipulations that made no mention of the

22  objection to venue prior to filing their motion to transfer the case for lack of venue.  *Id.* at 512-13,

23  517.  Similarly, in *Misch*, the defendants filed their motion for summary judgment before filing an

24  answer to the amended complaint.  *Id.* at 629.  In this case, however, Defendant filed an answer to

25  the amended complaint raising improper venue as a defense before engaging in any of the conduct

26  Plaintiffs claim constituted a waiver.  As Defendant timely raised venue as a defense in its answer,

27  and has since raised it in joint case management statements and in its briefs on the pending motions,

28  Defendant cannot be said to have waived the issue of venue here.

United States District Court

For the Northern District of California

1    Where there has been no waiver of venue, the court may raise the issue *sua sponte*.  *Costlow*,

2    790 F.2d at 1488.

3              b.    Forum Selection Clauses and the *Bremen* Rule

4    In diversity cases, federal courts apply federal law in determining the enforceability of forum

5    selection clauses.  *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988).  In

6    *M/S Bremen v. Zapata Off-Shore Co.*, the Supreme Court held that contractual forum selection

7    clauses "are *prima facie* valid," and thus enforceable absent a strong showing "that enforcement

8    would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or

9    overreaching."  407 U.S. 1, 10, 15 (1972).  Though *Bremen* is an admiralty case concerning an

10   international forum selection clause, it has been "widely applied to forum selection clauses in

11   general."  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996).  "The party seeking to

12   avoid the forum selection clause bears 'a heavy burden of proof.'"  *Richards v. Lloyd's of London*,

13   135 F.3d 1289, 1294 (9th Cir. 1998) (en banc), *quoting Bremen*, 407 U.S. at 17.

14   Federal courts have recognized three grounds for declining to enforce a forum selection

15   clause: (1) where the inclusion of the clause in the contract was the result of "fraud or

16   overreaching";  (2) if the party seeking to avoid the clause would be effectively deprived of its day

17   in court in the forum specified in the clause; or (3) if enforcement would contravene a strong public

18   policy of the forum in which the suit is brought.  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133,

19   1140 (9th Cir. 2004).

20   The parties do not directly address the applicability of the first two exceptions to the general

21   rule that forum selection clauses are valid and enforceable.  There is no indication of "fraud or

22   overreaching" in the employment contracts in this case.  *See Murphy*, 362 F.3d at 1141 (the mere

23   fact of unequal bargaining positions in an employment contract does not show fraud or

24   overreaching). Bernier and Sughroue certainly would not be denied their day in court if this Court

25   were to decline jurisdiction in deference to the forum selection clause since they are free to litigate

26   their claims and defenses in the Washington court once the stay there is lifted.  While Meras is not a

27   party in the Washington case, and may suffer prejudice were the Washington case were to proceed,

28

14

United States District Court

For the Northern District of California

1    enforcing the forum selection clause would not necessarily deny Meras its day in court within the

2    meaning of *Murphy*.

3         The Ninth Circuit has held that "a range of transaction participants, parties and non-parties,

4    should benefit from and be subject to forum selection clauses." *Manetti-Farrow, Inc. v. Gucci Am.,*

5    *Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988) (quoting  *Clinton v. Janger,* 583 F.Supp. 284, 290

6    (N.D.Ill.1984)).  A court may enforce the forum selection clause against someone who was not a

7    party to the contract where "the alleged conduct of the non-parties is . . . closely related to the

8    contractual relationship." *Id.*  In *Manetti-Farrow*, the court enforced a forum selection to dismiss a

9    variety of related corporate defendants, even though the plaintiff had only had a contract with one of

10   them. *Id.* at 511 (defendants were Gucci, Gucci's United States distribution company Gucci

11   America, partially-owned Gucci subsidiary Gucci Parfums, and three individual directors of various

12   Gucci enterprises). *See also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th

13   Cir. 2007) ("The forum selection clauses apply equally to BVNA and BV Canada because any

14   transactions between those entities and Holland America took place as part of the larger contractual

15   relationship between Holland America and Bureau Veritas.").

16        In *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc*., the court applied *Manetti-Farrow*

17   and held that a forum selection clause was enforceable against non-parties to the contract.  949 F.

18   Supp. 1427, 1434 (N.D. Cal. 1997).  That case concerned a software programmer who was in a

19   dispute with his former employer about ownership rights to certain streaming video software.  *Id.* at

20   1428-30.  The court enforced the forum selection clause against the company to which the

21   programmer had assigned his rights, and against an individual who allegedly helped to write the

22   software, though they had not signed the employment contract with the forum selection clause.  *Id.*

23   at 1432, 1434.  The court found that the successor-in-interest company and assistant programmer

24   "were closely related to the contractual relationship" because the resolution of the issues would

25   involve interpreting the terms of the contract between the programmer and his former employer.  *Id.*

26   at 1434.  *See also Seagal v. Vorderwuhlbecke*, 162 F. App'x 746, 747-48 (9th Cir. 2006) (enforcing

27   forum selection clause in a lease against all "parties having a significant relationship to the lease"

28

United States District Court

For the Northern District of California

1    where the forum selection clause stated that it applied to all disputes "arising out of or in connection

2    with" the lease).

3        In this case, Meras's claim is closely related to the contract entered into by Bernier and

4    Sughroue with CH2O.  As in *Graham*, resolving the issues in Meras's claims against Defendant

5    necessarily involves interpreting and determining the validity of portions of the employment

6    contracts at issue in the Washington case.  Furthermore, it may be possible for Meras to seek to

7    participate in the Washington case via intervention.  Accordingly, it appears that the first two

8    exceptions articulated in *Bremen* are not applicable here.

9                        c.    *Bremen's* Public Policy Exception

10       If the Plaintiffs are to avoid the forum selection clause, then, they must show that it falls into

11   the third *Bremen* exception by demonstrating that enforcing the clause would be contrary to a strong

12   California public policy.  However, California law, like federal law, generally favors the

13   enforcement of forum selection clauses.  *See Smith, Valentino & Smith, Inc. v. Superior Court*, 17

14   Cal. 3d 491, 495, 551 P.2d 1206 (1976).

15       Several Ninth Circuit cases have found forum selection clauses unenforceable based on the

16   *Bremen* public policy exception.  In *Jones v. GNC Franchising, Inc.*, the court found that the

17   *Bremen* public policy exception applied where California had an explicit statutory provision voiding

18   the particular type of forum selection clause at issue.  211 F.3d 495, 497-98 (9th Cir. 2000).  The

19   Ninth Circuit also applied the public policy exception when enforcing a forum selection clause

20   (requiring the case be heard by the Virginia State court) together with a choice-of-law provision

21   (requiring the application of Virginia law exclusive of its conflict of law rules), would have waived

22   the plaintiffs' statutory rights contrary to California's strong public policy.  *Doe 1 v. AOL LLC*, 552

23   F.3d 1077, 1084 (9th Cir. 2009).  More specifically, the court relied on a California Court of Appeal

24   decision interpreting the same contract, and held that enforcing the forum selection clause would

25   violate California public policy because Virginia state courts did not allow consumer class actions,

26   and because Virginia substantive law would strip consumers of important protections and remedies

27   provided by California law, thus violating an anti-waiver provision in California's consumer

28   protection law.  *Id.* at 1083-84.

United States District Court

For the Northern District of California

1        Plaintiffs argue in their reply on the summary judgment motion that Defendant has conceded

2   that the enforcement of the forum selection clause would contravene a strong public policy of

3   California.  Pl.'s Reply at 5-6.  What Defendant has conceded, however is that *the application of*

4   *Washington law* would be contrary to California public policy.  Def. Opp. to Mot. Summ. J. at 6.

5   None of Plaintiffs' arguments address why it would be contrary to California public policy to have

6   the case *heard* in Washington courts, as distinct from the determination of which state's substantive

7   law applies.  This distinction is critical because, unlike *Doe*, enforcing the venue clause (and

8   locating the forum in Washington) would not strip the plaintiffs here of any important procedural

9   protection.  Nor would its enforcement of the venue clause dictate *a priori* that Washington's

10  substantive law would apply.  While the Western District of Washington considered the validity of

11  the choice of law provision and ultimately concluded that Washington law governed, it did so only

12  after analyzing the validity of the choice of law provision under the Restatement of Conflict of Laws

13  § 187, which is also the applicable test under California law.  Hence, the Washington court applied

14  the *same* choice of law analysis that this Court sitting in California would apply.  Thus, the choice of

15  law decision was not pre-ordained by the choice of venue.

16        Indeed, two recent district court decisions have distinguished *Doe 1* in contexts where the

17  choice of law was not dictated by the enforcement of a forum selection clause.  *Sawyer v. Bill Me*

18  *Later, Inc.,*CV 10-04461 SJO JCGX, 2011 WL 7718723 (C.D. Cal. Oct. 21, 2011); *Gamayo v.*

19  *Match.com LLC*, C 11-00762 SBA, 2011 WL 3739542 (N.D. Cal. Aug. 24, 2011).  In *Sawyer* and

20  *Gamayo*, the courts noted that, unlike in *Doe 1*, the forum selection clauses before them allowed suit

21  to be brought in federal as well as state court.  *Sawyer*, 2011 WL 7718723, at *6;  *Gamayo*, 2011

22  WL 3739542, at *6.  This addressed the concern in *Doe 1* about the procedures in the Virginia state

23  courts barring consumer class actions.  These two cases further found that enforcing the forum

24  selection clause was distinct from the question of what law should apply.  *Sawyer*, 2011 WL

25  7718723, at *6-7 (citing several California district court decisions declining to consider choice-of-

26  law concerns in analysis of forum selection clause); *Gamayo*, 2011 WL 3739542, at *6 (same).  In

27  these cases, the party seeking to void the forum selection clause was free to raise their choice of law

28

United States District Court

For the Northern District of California

1  arguments with the district court in the selected forum. *Sawyer*, 2011 WL 7718723, at *6; *Gamayo*,

2  2011 WL 3739542, at *6.

3      A forum selection clause cannot be conflated with choice of law analysis. The Ninth Circuit

4  has noted that "[t]he Supreme Court repeatedly recognized . . . that parties to an international

5  securities transaction may choose law other than that of the United States, . . . yet it never suggested

6  that this affected the validity of a forum selection clause." *Richards*, 135 F.3d at 1295-96. As noted

7  above, the vesting of venue in Washington did not pre-ordain the selection of Washington law since

8  the choice of law rules in Washington are the same as California's. As a general matter, the

9  selection of a forum does not always dictate the choice of law. In a case concerning the validity of a

10  forum selection clause mandating arbitration in an international arbitration tribunal, the Supreme

11  Court noted that enforcing that clause would not preclude the application of relevant United States

12  law.

> To be sure, the international arbitral tribunal owes no prior allegiance
> to the legal norms of particular states; hence, it has no direct obligation
> to vindicate their statutory dictates. The tribunal, however, is bound to
> effectuate the intentions of the parties. Where the parties have agreed
> that the arbitral body is to decide a defined set of claims which
> includes, as in these cases, those arising from the application of
> American antitrust law, the tribunal therefore should be bound to
> decide that dispute in accord with the national law giving rise to the
> claim.

18  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 636-37 (1985).

19      To be sure, there are some situations where a forum selection clause may have the effect of

20  selecting the substantive law to be applied. *Bremer*, 407 U.S. at 13 n.15. The Court in *Mitsubishi*

21  did note that under certain circumstances a forum selection clause and a choice of law clause could

22  work together to create a result contrary to the public policy of the forum where the case was

23  brought. In *dicta*, the Court noted that "in the event the choice-of-forum and choice-of-law clauses

24  operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for

25  antitrust violations, we would have little hesitation in condemning the agreement as against public

26  policy." *Id.* at 637 n.19. One later Supreme Court case interpreting *Mitsubishi* footnote 19 seems to

27  indicate that the rule there might apply if the foreign forum had already decided not to apply U.S.

28  law. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528 (1995). In *Vimar*, the

United States District Court

For the Northern District of California

1    Court held that the plaintiff's arguments against applying the forum selection clause were

2    "premature" because the foreign arbitration commission had not yet determined whether it would

3    apply U.S. or other law. *Id.* at 540-41. Quoting *Mitsubishi*, the Court held that "[w]ere there no

4    subsequent opportunity for review and were we persuaded that 'the choice-of-forum and choice-of-

5    law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory

6    remedies . . . , we would have little hesitation in condemning the agreement as against public

7    policy.'" *Id.* at 540.

8         *Vimar* did not clearly settle this issue, however, since it was decided under a statute

9    specifically concerning shipping agreements that raises analytically distinct issues. The Court in

10   *Vimar* did not analyze the applicability of the forum selection clause under the test articulated in

11   *Bremen*; the key question in *Vimar* was whether the forum selection clause lessened the defendant's

12   liability in violation of the Carriage of Goods By Sea Act (COGSA). *Vimar*, 515 U.S. at 532. The

13   *Vimar* court's inquiry focused on whether the forum selection clause had the effect of lessening the

14   carrier's liability beyond what is allowed by COGSA, as that statute provides that any clause having

15   such an effect is void. *Id.* Indeed, the Ninth Circuit has distinguished *Vimar* on this basis, and

16   declined to apply it outside of cases arising under COGSA. *Richards*, 135 F.3d at 1296 n.5.

17        In fact, *Richards* held that *Mitsubishi's* footnote 19 was mere *dicta*, and not controlling law

18   in this Circuit. *Id.* at 1295-96; *see also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 722 (9th Cir.

19   1999) ("We have . . . indicated that we do not consider that footnote to be binding"). In *Richards*,

20   the Ninth Circuit applied *Bremen* and held that the application of a forum selection clause did not

21   contravene strong U.S. public policy articulated in various securities laws and RICO. *Richards*, 135

22   F.3d at 1296. The court acknowledged the forum selection clause would result in the application of

23   English law, under which the defendant was immune from many claims otherwise available under

24   U.S. securities law and from the plaintiff's RICO claims. *Id.* at 1296. Nonetheless, the court held

25   that English law offered "sufficient protection" to the plaintiffs' rights because the defendant could

26   be held liable for "actions committed in bad faith, including fraud." *Id.* at 1294. The court noted

27   that "were English law so deficient that the [plaintiffs] would be deprived of any reasonable

28   recourse, we would have to subject the choice clauses to another level of scrutiny." *Id.* at 1296.

United States District Court

For the Northern District of California

1    In contrast to *Richards*, as explained above, enforcement of the venue clause did not pre-

2    ordain the selection of choice of law in this case.  Moreover, any argument that the venue clause

3    should be enforced because the Washington court has already ruled on that Washington substantive

4    law applies raises a fundamental question whether the public policy exception to *Bremen* should be

5    analyzed categorically (based on the generally applicable aspects of local law and procedures of the

6    selected forum) or post hoc (based not on structural or inherent aspects of the forum but on specific

7    rulings of an individual court in that forum).  While *Vimar* contains some suggestion that the post

8    hoc approach might apply, as noted above, neither the Supreme Court nor the Ninth Circuit has

9    adopted such an approach.  *See, e.g., Doe I*, 552 F.3d at 1082-84 and *Richards*, 135 F.3d at 1294-95.

10   In the absence of clear authority, this Court is hesitant to employ a post hoc approach because such

11   an approach would create uncertainty and inconsistency in the enforcement of forum selection

12   clauses under identical circumstances (same contractual clause, same state).  A forum selection

13   clause would be enforceable in one court but not another (even though general procedures and law

14   are identical) based solely on the ruling of an individual court as to choice of law.  In addition to

15   potential variations *between* similarly situated cases, such an analysis would introduce uncertainty

16   *within* a case:  enforceability of a venue clause might not be determined until the forum court

17   decides the choice of law question; that decision might not occur until the case advances all the way

18   to summary judgment or even trial.  In addition, a post hoc approach threatens comity between

19   courts; the non-selected court would be in a position of second guessing the substantive rulings of

20   the forum-selected court – if the latter decided choice of law in a way that the second court deems

21   violative of its state's public policy, it would refuse to stay and act in competition with the forum

22   court's exercise of jurisdiction.  Given these potentially adverse policy implications, this Court is

23   reluctant to employ a post hoc analysis in which the *Bremen* public policy exception turns on the

24   particular ruling of the Washington court on choice of law.  Instead, the Court looks on an *a priori*

25   basis to determine whether there is something inherent in the general law and procedure of the

26   Washington courts which contravene strong California public policy.  There is not.

27       Furthermore, as in *Richards*, there is no showing that Washington law was "so deficient that

28   [plaintiffs] would be deprived of any reasonable recourse."  135 F.3d at 1296.  While Washington

law does not categorically prohibit non-compete clauses as does California law, it does subject such clauses to a reasonableness test. *See, e.g.*, *Perry v. Moran*, 109 Wash.2d 691, 698, 748 P.2d 224 (1987).

Thus, Plaintiffs have not carried their "heavy burden" of proving the forum selection clause in the contracts at issue in this case is unenforceable. Though the Defendant has only moved the court for a stay, not a dismissal, ordinarily, when a case is brought in the wrong district, the court where it is brought "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. Since Plaintiffs have not demonstrated the forum selection clause in this case is unenforceable, dismissal is appropriate here.

## IV.   CONCLUSION

For the foregoing reasons, this Court **DISMISSES** this case without leave to amend herein. Plaintiffs' motion for summary judgment and Defendant's motion for a stay are **DENIED** as moot. The Clerk shall enter judgment and close the file.

This order disposes of Docket Numbers 54 and 58.


IT IS SO ORDERED.


Dated: January 14, 2013

_____
EDWARD M. CHEN
United States District Judge

United States District Court
For the Northern District of California